## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

UNITED STATES OF AMERICA

v.

           **SECOND SUPERSEDING**
           **INDICTMENT**

**CARLOS ANDRES MONSALVE**
  **a/k/a Toty**
  **a/k/a Toti**
  **a/k/a Sebastian,**
**JORGE ENRIQUE LONDONO**
  **a/k/a Alvaro Pardo Prado**
  **a/k/a Gordo**
  **a/k/a Toty,**
**LUZ KARIME RAMOS TERAN**
  **a/k/a La Negra,**
**FABIO PEREZ GOMEZ**
  **a/k/a Carlos Alberto Abud Galindo,**
**ROBINSON MARTINEZ DASA**
**and**
**JEAN MANUEL BARADA RIVERA**
  **a/k/a Bori**

           **4:07cr56-RH**

_____/

## THE GRAND JURY CHARGES:

### COUNT ONE

That from a date unknown, but at least by August 2005, and continuing to on or about

September 11, 2007, in the Northern District of Florida, and elsewhere, the defendants,

          **CARLOS ANDRES MONSALVE**
              **a/k/a Toty**
              **a/k/a Toti**
            **a/k/a Sebastian,**

Returned in open court pursuant to Rule 6(f)

12-11-07

Date

United States Magistrate Judge

JORGE ENRIQUE LONDONO
a/k/a Alvaro Pardo Prado
a/k/a Gordo
a/k/a Toty,
LUZ KARIME RAMOS TERAN
a/k/a La Negra,
FABIO PEREZ GOMEZ
a/k/a Carlos Alberto Abud Galindo,
ROBINSON MARTINEZ DASA,
and
JEAN MANUEL BARADA RIVERA
a/k/a Bori ,

did knowingly and wilfully combine, conspire, confederate and agree with each other and other persons to commit offenses against the United States, to wit:

### OBJECTS OF THE CONSPIRACY

1.      Knowing that force, fraud, and coercion, as defined in Title 18, United States Code, Section 1591(c)(2), would be used to cause a person to engage in a commercial sex act, to knowingly recruit, entice, harbor, transport, provide, and obtain by any means any person, in and affecting interstate and foreign commerce, and benefit, financially and receive anything of value, from participation in a venture which engaged in such recruiting, enticing, harboring, transporting, providing and obtaining by any means a person, in violation of Title 18, United States Code, Section 1591.

2.      For the purpose of commercial advantage and private financial gain: to transport and move aliens within the United States by means of transportation and otherwise, knowing and in reckless disregard of the fact that the aliens had come to, entered, and remained in the United States in violation of law, and to conceal, harbor, and shield from detection such aliens in any place, knowing and in reckless disregard of the fact that the aliens have come to, entered and

2

remained in the United States in violation of law, in violation of Title 8, United States Code, Section 1324.

3.    To knowingly import into the United States female aliens for the purpose of prostitution, and hold such female aliens for the purpose of prostitution in pursuance of such importation and keep, maintain, control, support, employ and harbor in a house for the purpose of prostitution such female aliens in pursuance of such illegal importation, in violation of Title 8, United States Code, Section 1328; and

4.    To knowingly transport, and attempt to transport, an individual in interstate and foreign commerce from places outside the United States into the State of Texas and from the State of Texas to the State of Florida, with intent that the individual engage in prostitution in violation of the laws of the State of Florida, that is, Section 796, Florida Statutes, in violation of Title 18, United States Code, Section 2421.

## MANNER AND MEANS

The manner and means by which the conspiracy was carried out included the following:

1.    It was part of the conspiracy that the conspirators would and did induce, recruit, entice, and coerce women to come to the United States from various countries in Central and South America to engage in prostitution in the State of Florida.

2.    It was further part of the conspiracy that conspirators would and did tell some of the women that they would be employed in legitimate jobs, such as maids, and would be given assistance in becoming United States citizens.

3

3.      It was further part of the conspiracy that conspirators would and did charge the women a transportation fee, which the women had to pay back by working as prostitutes in the United States.

4.      It was further part of the conspiracy that conspirators would and did take and keep identification documents from some of the women.

5.      It was further part of the conspiracy that conspirators would and did cause the women to be smuggled into the United States illegally.

6.      It was further part of the conspiracy that conspirators would and did transport the women from the State of Texas to the State of Florida and harbor them at various places; to include residences located in Tallahassee, Tampa, and Jacksonville.

7.      It was further part of the conspiracy that conspirators, by means of force, fraud, and coercion caused some of the women to work as prostitutes.

8.      It was further part of the conspiracy that conspirators would and did make the women engage in prostitution at various locations in the State of Florida, to include Tallahassee, Tampa, and Jacksonville, and required the women to engage in multiple sexual contacts with multiple partners on a daily basis.

9.      It was further part of the conspiracy that conspirators would and did transport the women throughout the State of Florida in order for the women to engage in prostitution.

10.     It was further part of the conspiracy that conspirators rotated women from city to city in the State of Florida on a weekly or bi-weekly basis.

11.     It was further a part of the conspiracy that conspirators distributed business cards on which a telephone number was printed for prospective customers to call for a prostitute.

4

12.     It was further part of the conspiracy that conspirators used cellular telephones to promote their prostitution businesses by, among other things, to make appointments for customers with the women, to communicate with their drivers, and to communicate with each other.

13.     It was further part of the conspiracy that conspirators would and did supply the women as prostitutes to male customers by receiving calls from the men requesting a prostitute and then driving the women to the customer's location to have sex in exchange for money.

14.     It was further part of the conspiracy that conspirators worked as drivers and transported the women to locations requested by customers to engage in sexual acts and collected payment from the customers.

15.     It was further a part of the conspiracy that the women engaged in sexual acts with male customers, normally charging $30.00 in cash for fifteen minutes of sexual intercourse.

16.     It was further part of the conspiracy that conspirators would and did keep the proceeds received for the women engaging in prostitution.

17.     It was further part of the conspiracy that conspirators collected money from the customers in cash and used the money to promote the prostitution businesses by paying the co-conspirator drivers to transport the women to the customer's location, and paying other related expenses such as the cost of food and clothing for the women, rent, and cellular telephone service.

18.     It was further part of the conspiracy that conspirators would and did transfer proceeds from the prostitution business in the State of Florida to individuals in other countries.

5

## OVERT ACTS

In furtherance of this conspiracy, and to effect the objects thereof, the following overt acts, among others, were committed by the Defendant and others in the Northern District of Florida, and elsewhere:

19.     Between in or about August 2005 and in or about December 2005, defendant, **CARLOS ANDRES MONSALVE**, provided women to men in the Tallahassee area in exchange for money.

20.     In or about November 2005, defendant, **CARLOS ANDRES MONSALVE**, picked up an illegal female alien identified for purposes of this indictment as Victim 4 at a McDonald's Restaurant in Tampa, Florida.

21.     In or about November 2005, defendant, **CARLOS ANDRES MONSALVE**, transported Victim 4 to the residence of defendant, **LUZ KARIME RAMOS TERAN**, in Jacksonville, Florida.

22.     In or about November 2005, defendant, **CARLOS ANDRES MONSALVE**, instructed Victim 4 that she was to have sex with men for money to pay her debt for being brought into the United States.

23.     In or about November 2005, defendant, **CARLOS ANDRES MONSALVE**, drove Victim 4 to several locations in the Jacksonville area where he instructed her to have sex with men.

24.     In or about January 2006, defendant, **CARLOS ANDRES MONSALVE**, introduced co-conspirator Jorge Melchor to a customer, Abraham Soto, as the new "Toty" who would take over the delivery of prostitutes in the Tallahassee area.

25. In or about February 2006, defendant, **CARLOS ANDRES MONSALVE**, transported Victim 4 to Tallahassee, Florida to engage in sexual intercourse with men for money.

26. On or about November 25, 2005, defendant, **CARLOS ANDRES MONSALVE**, purchased a cellular telephone and cellular telephone service for Victim 4 in the name of Krisbel Lopez.

27. On or about June 24, 2006, defendant, **CARLOS ANDRES MONSALVE**, sent a money order for $1,200 from Tampa, Florida under the name "Tabares Jose Andres" to "Carlos Uriel Tabares Rodriquez" in Costa Rica.

28. On or about July 11, 2006, defendant, **CARLOS ANDRES MONSALVE**, sent a money order for $1,000 from Tampa, Florida under the name "Cecar Hernandez" to "Federico Alfonso Hernandez Barrios" in Guatemala.

29. On or about August 7, 2007, defendant, **CARLOS ANDRES MONSALVE**, drove a woman to an apartment in the Jacksonville area where he and the woman went inside for approximately 30 minutes.

30. On or about August 8, 2007, defendant, **CARLOS ANDRES MONSALVE**, drove a woman to several apartments in the Jacksonville area where he and the woman went inside each apartment for approximately 30 minutes.

31. In or about November 2005, defendant, **JORGE ENRIQUE LONDONO**, drove Victim 4 to several locations in the Jacksonville area for her to have sex with men.

32. On or about August 22, 2007, defendant, **JORGE ENRIQUE LONDONO**, drove a woman to several apartments in the Orlando area where he and the woman went inside each apartment for approximately 30 minutes.

7

33. On or about August 23, 2007, defendant, **JORGE ENRIQUE LONDONO**, drove a woman to several apartments in the Orlando area where he and the woman went inside each apartment for approximately 30 minutes.

34. In or about November 2005, defendant, **LUZ KARIME RAMOS TERAN**, housed Victim 4 at her residence in Jacksonville, Florida.

35. In or about November 2005, defendant, **LUZ KARIME RAMOS TERAN**, instructed Victim 4 that she was to have sex with men for money to pay her debt for being brought into the United States.

36. In or about November 2005, defendant, **LUZ KARIME RAMOS TERAN**, instructed Victim 4 on how to use a condom by demonstrating on a bottle.

37. On or about October 21, 2006, defendant, **LUZ KARIME RAMOS TERAN**, visited a co-conspirator, Jorge Wilmar Guarin Melchor, in the Leon County Jail.

38. On or about October 27, 2006, defendant, **LUZ KARIME RAMOS TERAN**, visited a co-conspirator, Jorge Wilmar Guarin Melchor, in the Leon County Jail.

39. During the time period of the conspiracy, defendant **FABIO PEREZ GOMEZ**, transported illegal female aliens throughout the State of Florida for the purpose of prostitution.

40. On or about July 25, 2006, defendant **FABIO PEREZ GOMEZ**, sent a money order for $1,000.00 to "Gloria Nancy Ortiz Giraldo" in Columbia.

41. On or about August 8, 2007, defendant **FABIO PEREZ GOMEZ**, drove a woman to an apartment where he and the woman went inside for approximately 30 minutes.

8

42.     During the time period of the conspiracy, defendant **ROBINSON MARTINEZ DASA**, transported illegal female aliens throughout the Jacksonville, Florida area for the purpose of prostitution.

43.     On or about August 7, 2007, defendant, **ROBINSON MARTINEZ DASA**, drove a woman and defendant Carlos Monsalve to an apartment in the Jacksonville area where the woman and Carlos Monsalve went inside for approximately 30 minutes.

44.     On or about August 8, 2007, defendant, **ROBINSON MARTINEZ DASA**, drove a woman and defendant Carlos Monsalve to several apartments in the Jacksonville area where the woman and Carlos Monsalve went inside each apartment for approximately 30 minutes.

45.     During the time period of the conspiracy, defendant **JEAN MANUEL BARADA RIVERA**, transported illegal female aliens throughout the Jacksonville and Orlando, Florida areas for the purpose of prostitution and collected payment from the customers.

46.     In or about December 2006, defendant **JEAN MANUEL BARADA RIVERA**, transported Victim 5 from Orlando, Florida to Jacksonville, Florida.

47.     In or about December 2006, defendant **JEAN MANUEL BARADA RIVERA**, drove Victim 5 to several locations in the Jacksonville area for her to have sex with men.

48.     During the time period of the conspiracy, defendant, **JEAN MANUEL BARADA RIVERA**, assisted in purchasing a cellular telephone and cellular telephone service for Victim 5 in the name of Sonia Perez.

49.     During the time period of the conspiracy, defendant, **JEAN MANUEL BARADA RIVERA**, assisting in purchasing cellular telephones and cellular telephone service for several illegal female aliens who were working as prostitutes for him and the co-conspirators.

9

50.    During the time period of the conspiracy a co-conspirator, Juan Jimenez Henao, transported illegal female aliens throughout the State of Florida for the purpose of prostitution.

51.    During the time period of the conspiracy a co-conspirator, Juan Jimenez Henao, picked up illegal female aliens in cities within the State of Florida and drove them to other cities within the State of Florida for the purpose of prostitution, these cities included Tallahassee, Tampa, Jacksonville, Naples, West Palm Beach, Orlando and Miami.

52.    Between in or about January 2006, and in or about July 2006, a co-conspirator, Juan Jimenez Henao, transported illegal female aliens to Tallahassee, Florida for the purpose of prostitution.

53.    On or about July 14, 2006, a co-conspirator, Jorge Wilmar Guarin Melchor, picked up three illegal female aliens identified for the purpose of this Indictment as Victim 1, Victim 2, and Victim 3 at a gas station in Tallahassee, Florida, and drove them to his residence.

54.    On or about July 14, 2006, the co-conspirator, Jorge Wilmar Guarin Melchor, took Victim 1, Victim 2, and Victim 3 shopping in Tallahassee and purchased them new clothes.

55.    On or about July 14, 2006, a co-conspirator, Jorge Wilmar Guarin Melchor, gave both Victim 1 and Victim 2 a purse containing condoms and personal lubricant.

56.    On or about July 14, 2006, a co-conspirator, Jorge Wilmar Guarin Melchor, drove Victim 1 and Victim 2 to several locations in the Tallahassee area where he instructed the victims to have sex with men.

57.    On or about July 15, 2006, a co-conspirator, Jorge Wilmar Guarin Melchor, drove Victim 2 and Victim 3 to several locations in the Tallahassee area where he instructed them to have sex with men.

10

58.     During the time period of the conspiracy a co-conspirator, Jorge Wilmar Guarin Melchor, charged and collected approximately $30 for each 15 minute increment of sexual activity.

All in violation of Title 8, United States Code, Section 1324(a)(1)(A)(v)(I), and Title 18, United States Code, Section 371.

## COUNT TWO

That between in or around October 2005, and in or around April, 2006, in the Northern District of Florida, and elsewhere, the defendant,

### CARLOS ANDRES MONSALVE
### a/k/a Toty
### a/k/a Toti
### a/k/a Sebastian,

did knowingly, in and affecting interstate and foreign commerce, recruit, entice, harbor, transport, provide, and obtain by any means Victim 4 and did benefit, financially and by receiving a thing of value, from participation in a venture which engaged in such recruiting, enticing, harboring, transporting, providing and obtaining by any means Victim 4, knowing that force, fraud, and coercion, as defined in Title 18, United States Code, Section 1591(c)(2), would be used to cause Victim 4 to engage in a commercial sex act.

All in violation of Title 18, United States Code, Sections 1591 and 2.

## COUNT THREE

That between on or about June 25, 2006, and on or about July 16, 2006, in the Northern District of Florida, and elsewhere, the defendant,

### CARLOS ANDRES MONSALVE
### a/k/a Toty

11

**a/k/a Toti
a/k/a Sebastian,**

did knowingly, in and affecting interstate and foreign commerce, recruit, entice, harbor, transport, provide, and obtain by any means Victim 1 and did benefit, financially and by receiving a thing of value, from participation in a venture which engaged in such recruiting, enticing, harboring, transporting, providing and obtaining by any means Victim 1, knowing that force, fraud, and coercion, as defined in Title 18, United States Code, Section 1591(c)(2), would be used to cause Victim 1 to engage in a commercial sex act.

All in violation of Title 18, United States Code, Sections 1591 and 2.

## COUNT FOUR

That between on or about June 25, 2006, and on or about July 16, 2006, in the Northern District of Florida, and elsewhere, the defendant,

**CARLOS ANDRES MONSALVE
a/k/a Toty
a/k/a Toti
a/k/a Sebastian,**

did knowingly, in and affecting interstate and foreign commerce, recruit, entice, harbor, transport, provide, and obtain by any means Victim 2 and did benefit, financially and by receiving a thing of value, from participation in a venture which engaged in such recruiting, enticing, harboring, transporting, providing and obtaining by any means Victim 2, knowing that force, fraud, and coercion, as defined in Title 18, United States Code, Section 1591(c)(2), would be used to cause Victim 2 to engage in a commercial sex act.

All in violation of Title 18, United States Code, Sections 1591 and 2.

## COUNT FIVE

12

That between in or about February 2006, and in or about March 2006, in the Northern District of Florida, the defendant,

**CARLOS ANDRES MONSALVE**
**a/k/a Toty**
**a/k/a Toti**
**a/k/a Sebastian,**

did knowingly and in reckless disregard of the fact that an alien, namely, Victim 4, had come to, entered and remained in the United States in violation of law, did conceal, harbor and shield from detection such alien in a building located in Tallahassee, Florida, and means of transportation, for the purpose of commercial advantage and private financial gain, in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(iii) and 1324(a)(1)(B)(i).

## COUNT SIX

That between in or about October 2005, and in or about April 2006, in the Northern District of Florida, and elsewhere, the defendant,

**CARLOS ANDRES MONSALVE**
**a/k/a Toty**
**a/k/a Toti**
**a/k/a Sebastian,**

did knowingly import directly and indirectly into the United States an alien, namely, Victim 4, for the purpose of prostitution, and hold such alien for the purpose of prostitution in pursuance of such illegal importation and keep, maintain, control, support, employ and harbor in a house and other place for the purpose of prostitution such alien in pursuance of such illegal importation, in violation of Title 8, United States Code, Section 1328 and Title 18, United States Code, Section 2.

13

## COUNT SEVEN

That between on or about June 25, 2006, and on or about July 16, 2006, in the Northern District of Florida, and elsewhere, the defendant,

### CARLOS ANDRES MONSALVE
### a/k/a Toty
### a/k/a Toti
### a/k/a Sebastian,

did knowingly import directly and indirectly into the United States an alien, namely, Victim 1, for the purpose of prostitution, and hold such alien for the purpose of prostitution in pursuance of such illegal importation and keep, maintain, control, support, employ and harbor in a house and other place for the purpose of prostitution such alien in pursuance of such illegal importation, in violation of Title 8, United States Code, Section 1328 and Title 18, United States Code, Section 2.

## COUNT EIGHT

That between on or about June 25, 2006, and on or about July 16, 2006, in the Northern District of Florida, and elsewhere, the defendant,

### CARLOS ANDRES MONSALVE
### a/k/a Toty
### a/k/a Toti
### a/k/a Sebastian,

did knowingly import directly and indirectly into the United States an alien, namely, Victim 2, for the purpose of prostitution, and hold such alien for the purpose of prostitution in pursuance of such illegal importation and keep, maintain, control, support, employ and harbor in a house and other place for the purpose of prostitution such alien in pursuance of such illegal importation, in violation of Title 8, United States Code, Section 1328 and Title 18, United States Code,

14

Section 2.

## COUNT NINE

That between in or about October 2005, and in or about November 2005, in the Northern District of Florida, and elsewhere, the defendant,

### CARLOS ANDRES MONSALVE
### a/k/a Toty
### a/k/a Toti
### a/k/a Sebastian,

did knowingly transport, and cause to be transported, an individual, that is Victim 4, in interstate and foreign commerce from the Country of Guatemala through the Country of Mexico into the State of Texas and from the State of Texas to the State of Florida, with intent that Victim 4 engage in prostitution in violation of the laws of the State of Florida, that is, Section 796, Florida Statutes, in violation of Title 18, United States Code, Sections 2421 and 2.

## COUNT TEN

That between on or about June 25, 2006, and on or about July 16, 2006, in the Northern District of Florida, and elsewhere, the defendant,

### CARLOS ANDRES MONSALVE
### a/k/a Toty
### a/k/a Toti
### a/k/a Sebastian,

did knowingly transport, and cause to be transported, an individual, that is Victim 1, in interstate and foreign commerce from the Country of Guatemala through the Country of Mexico into the State of Texas and from the State of Texas to the State of Florida, with intent that Victim 1 engage in prostitution in violation of the laws of the State of Florida, that is, Section 796, Florida Statutes, in violation of Title 18, United States Code, Sections 2421 and 2.

15

## COUNT ELEVEN

That between on or about June 25, 2006, and on or about July 16, 2006, in the Northern District of Florida, and elsewhere, the defendant,

### CARLOS ANDRES MONSALVE
### a/k/a Toty
### a/k/a Toti
### a/k/a Sebastian,

did knowingly transport, and cause to be transported, an individual, that is Victim 2, in interstate and foreign commerce from the Country of Guatemala through the Country of Mexico into the State of Texas and from the State of Texas to the State of Florida, with intent that Victim 2 engage in prostitution in violation of the laws of the State of Florida, that is Section 796, Florida Statutes, in violation of Title 18, United States Code, Sections 2421 and 2.

### TITLE 8 FORFEITURE

The allegations contained in Counts One and Five of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to the provisions of Title 8, United States Code, Section 1324(b).

1. From their engagement in any or all of the violations alleged in Count One of this Indictment, the defendants,

### CARLOS ANDRES MONSALVE
### a/k/a Toty
### a/k/a Toti
### a/k/a Sebastian,
### JORGE ENRIQUE LONDONO
### a/k/a Alvaro Pardo Prado
### a/k/a Gordo
### a/k/a Toty,
### LUZ KARIME RAMOS TERAN
### a/k/a La Negra,

16

**FABIO PEREZ GOMEZ**
**a/k/a Carlos Alberto Abud Galindo,**
**ROBINSON MARTINEZ DASA**
**and**
**JEAN MANUEL BARADA RIVERA**
**a/k/a Bori ,**

2. From the defendants, engagement in any or all of the violations alleged in Count

Five of this Indictment, the defendant,

**CARLOS ANDRES MONSALVE**
**a/k/a Toty**
**a/k/a Toti**
**a/k/a Sebastian,**
**JORGE ENRIQUE LONDONO**
**a/k/a Alvaro Pardo Prado**
**a/k/a Gordo**
**a/k/a Toty,**
**LUZ KARIME RAMOS TERAN**
**a/k/a La Negra,**
**FABIO PEREZ GOMEZ**
**a/k/a Carlos Alberto Abud Galindo,**
**ROBINSON MARTINEZ DASA,**
**and**
**JEAN MANUEL BARADA RIVERA**
**a/k/a Bori ,**

shall forfeit to the United States, pursuant to Title 8, United States Code, Section 1324(b), all of

their interest in any conveyance, including any vessel, vehicle, or aircraft, that has been or is

being used in the commission of a violation of Title 8, United States Code, Section 1324(a) and

any gross proceeds of such violation, and any property traceable to such conveyance or proceeds.

## TITLE 18 FORFEITURE

The allegations contained in Counts One, Two, Three, Four, and Six through Eleven of

this Indictment are hereby realleged and incorporated by reference for the purpose of alleging

forfeiture pursuant to the provisions of Title 18, United States Code, Sections 1594(c)(1), 2428,

17

and 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

1.       From their engagement in any or all of the violations alleged in Counts One, Two,

Three, Four, and Six through Eleven of this Indictment, the defendants

**CARLOS ANDRES MONSALVE**
**a/k/a Toty**
**a/k/a Toti**
**a/k/a Sebastian,**
**JORGE ENRIQUE LONDONO**
**a/k/a Alvaro Pardo Prado**
**a/k/a Gordo**
**a/k/a Toty,**
**LUZ KARIME RAMOS TERAN**
**a/k/a La Negra,**
**FABIO PEREZ GOMEZ**
**a/k/a Carlos Alberto Abud Galindo,**
**ROBINSON MARTINEZ DASA**
**and**
**JEAN MANUEL BARADA RIVERA**
**a/k/a Bori ,**

shall forfeit to the United States, pursuant to Title 18, United States Code, Sections 1594(c)(1),

2428, and 981(a)(1)(C), and Title 28, United States Code, Section 2461(c) any and all of the

defendants' right, title and interest in any property, real and personal, constituting, and derived

from, proceeds traceable to such offense.

If any of the property described above as being subject to forfeiture, as a result of acts or

omissions of the defendants:

1.       cannot be located upon the exercise of due diligence;

2.       has been transferred, sold to, or deposited with a third party;

3.       has been placed beyond the jurisdiction of this Court;

4.       has been substantially diminished in value; or

18

5.     has been commingled with other property which cannot be subdivided

without difficulty,

it is the intent of the United States, pursuant to Title 28, United States Code, Section 2461(c) and

Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said

defendants up to the value of the forfeitable property.

A TRUE BILL:

REDACTED

GREGORY R. MILLER
United States Attorney

COREY J. SMITH
Assistant United States Attorney

19